ORIGINAL

Approved: [signature]
MOLLIE BRACEWELL/ROBERT B. SOBELMAN
Assistant United States Attorneys

Before: THE HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

19 MAG 6591

- - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **SEALED COMPLAINT** |
| - v. - | : | Violations of 21 U.S.C. § 846 |
| MUNIF AHMED, and MOHAMED RASHED, | : | COUNTY OF OFFENSE: BRONX |
| Defendants. | : | |

- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

BRETT TOPPING, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

**COUNT ONE**
(Conspiracy to Unlawfully Distribute a Controlled Substance and a Controlled Substance Analogue)

1. From at least in or about July 2018, up to and including in or about July 2019, in the Southern District of New York and elsewhere, MUNIF AHMED and MOHAMED RASHED, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the controlled substance laws of the United States.

2. It was a part and an object of the conspiracy that MUNIF AHMED and MOHAMED RASHED, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance and a controlled substance analogue, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that MUNIF AHMED and MOHAMED RASHED, the defendants, conspired to distribute and

possess with intent to distribute was mixtures and substances containing a detectable amount of methyl 2-(1-(5-fluoropentyl)-1H-indazole-3-carboxamido)-3,3-dimethylbutanoate) (known as "5F-ADB" and "5F-MDMB-PINACA"), in violation of Title 21, United States Code, Section 841(b)(1)(C).

4. The controlled substance analogue that MUNIF AHMED and MOHAMED RASHED, the defendants, conspired to distribute and possess with intent to distribute was mixtures and substances containing a detectable amount of N-[[1-(5-fluoropentyl)-1H-indol-3-yl]carbonyl]-3-methyl-L-valine, methyl ester (known as "5F-MDMB-PICA" and "5F-MDMB-2201"), a controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), of methyl 2-(1-(5-fluoropentyl)-1H-indazole-3-carboxamido)-3,3-dimethylbutanoate) (known as "5F-ADB" and "5F-MDMB-PINACA"), that was intended for human consumption and is treated as a controlled substance in Schedule I of the Controlled Substances Act, in violation of Title 21, United States Code, Sections 813 and 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5. I am a Detective with the NYPD and I have been personally involved in the investigation of this matter, which has been handled jointly by the NYPD, the Drug Enforcement Administration ("DEA"), and the Department of Homeland Security, Homeland Security Investigations ("HSI"). This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement agents, witnesses, and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Based on my training, experience, and participation in this investigation, I have learned, among other things, the following:

a. Synthetic cannabinoids are lab-produced chemicals that typically are listed as Schedule I controlled

substances or treated as controlled substance analogues under the United States drug laws.

b. Smokeable synthetic cannabinoids ("SSC"), which colloquially are referred to as "K2" or "Spice," include dried, shredded plant material onto which the synthetic cannabinoid chemicals have been sprayed. SSC generally is made in bulk quantities, and is then packed into small packages (often each holding two to five grams of SSC) branded with colorful graphics and distinctive names. Typically, substantial wholesale quantities of the small packages are sold by wholesale suppliers to retail suppliers (often hundreds or thousands at a time), who, in turn, sell the packages individually or in small bundles to individual drug users.

c. SSC, which can be addictive, often are marketed as safe, legal alternatives to marijuana. In fact, SSC are not safe and may affect the brain much more powerfully than marijuana; their actual effects can be unpredictable and, in some cases, more dangerous or even life-threatening.

7. Based on my conversations with a cooperating witness (the "CW"),[1] I have learned, among other things, that between in or about July 2018 and in or about June 2019, and before the CW was cooperating with law enforcement, the CW regularly was supplied on consignment with wholesale quantities of SSC by MUNIF AHMED,[2] the defendant, for distribution by the CW to wholesale purchasers. AHMED provided the SSC to the CW in the Bronx, New York. During that time period, AHMED agreed to and did provide several payments to the CW to, among other things, pay for the CW to maintain a storage locker (the "Storage Locker") in the Bronx, New York, in which significant quantities of SSC were stored for AHMED.

---

[1] The CW was charged in or about June 2019 with federal drug offenses and is providing assistance to law enforcement agents in the hope of obtaining leniency at sentencing. The information provided by the CW has been corroborated, in part, by other evidence gathered in the course of the investigation, such as call detail records, cellphone location information, and text messages and social media messages.

[2] The CW identified MUNIF AHMED, the defendant, as the individual depicted in a photograph known to be of AHMED that is contained in a law enforcement database.

8. On or about June 14, 2019, I and other law enforcement agents, after obtaining the CW's written consent, conducted a search of the Storage Locker and recovered, among other things, approximately 50,000 retail packages, each of which contained approximately five grams, that appeared, based on law enforcement agents' training and experience, to be SSC (that is, approximately 250 kilograms of SSC).[3]

9. Based on my conversations with the CW, I have learned, among other things, that between in or about November 2018 and in or about June 2019, on approximately a dozen occasions, the CW assisted MOHAMED RASHED, the defendant,[4] in spraying dried, shredded plant material with synthetic cannabinoid powder that had been mixed with a liquid, and packaged it into retail bags. Each time, RASHED undertook this process at the CW's apartment (the "Apartment") in the Bronx, New York. During the same time period, MUNIF AHMED, the defendant, made several payments to the CW for the purpose of assisting the CW in paying rent for the Apartment, as compensation for permitting RASHED to spray and package SSC at the Apartment. On at least one occasion, AHMED also assisted RASHED with packaging the SSC for sale at the Apartment.

10. Based on my conversations with the CW and my review of draft translations of Arabic-language text messages and social media direct messages that the CW received from a telephone number and social media account, respectively, associated with MUNIF AHMED, the defendant, I have learned, among other things, the following:

a. In or about early July 2019, AHMED contacted the CW by telephone and instructed the CW to deliver to AHMED a particular wholesale quantity of SSC from the Storage Locker (which, unbeknownst to AHMED, had been recovered by law enforcement agents), for AHMED to provide to a wholesale customer.

b. Subsequently, on or about July 11, 2019, AHMED sent a text message to the CW and instructed the CW to

---

[3] The totals provided herein are estimates, as law enforcement agents have not completed a full count of the items recovered. The suspected SSC has been submitted to a law enforcement laboratory for testing and the results are pending.

[4] The CW identified MOHAMED RASHED, the defendant, as the individual depicted in a photograph known to be of RASHED that is contained in a law enforcement database.

"take out 5,000 of the good ones from the storage and I will come get them in the morning." The CW, acting at the direction of law enforcement agents, did not respond.

c. In the morning on or about July 12, 2019, AHMED sent a direct message via a social media application to the CW stating, in part, "I need the stuff in the afternoon buddy. The customer is driving me crazy. I ignored him for a week. Take them out and I will come by the house and take them. Don't forget."

d. Later on or about July 12, 2019, AHMED sent a text message to the CW stating "dick, what's this fucking around" and directed the CW to "take the stuff out today and leave it in the house." AHMED then sent another text message stating "I will come by later and don't fuck with me."

11. Based on my participation in this investigation, including my review of law enforcement reports and laboratory reports, I have learned, among other things, that between July 2018 and June 2019, law enforcement agents acting in a covert capacity obtained from the CW on at least six occasions wholesale quantities of SSC that have been tested by a laboratory and were determined each to contain a detectable amount of 5F-ADB and/or 5F-MDMB-PICA.[5]

12. Based on my conversations with the CW, I have learned, among other things, that most or all of the SSC referred to in the prior paragraph was sprayed and packaged by MOHAMED RASHED, the defendant, and was supplied on consignment to the CW by MUNIF AHMED, the defendant.

---

5 Based on information provided by the DEA and HSI, I have learned, among other things, that at all times relevant to this Complaint, 5F-ADB was listed as a Schedule I controlled substance and 5F-MDMB-PICA was a controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), of 5F-ADB, is therefore treated as a controlled substance in Schedule I of the Controlled Substances Act, pursuant to Title 21, United States Code, Sections 813 and 841(b)(1)(C).

WHEREFORE, deponent respectfully requests that warrants be issued for the arrest of MUNIF AHMED and MOHAMED RASHED, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

BRETT TOPPING
DETECTIVE
NEW YORK CITY POLICE DEPARTMENT

Sworn to before me this
16th day of July, 2019

THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK